[Cite as *State v. Warnock*, 2018-Ohio-4481.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2018-01-016 |
| - vs - | : | O P I N I O N<br>11/5/2018 |
| | : | |
| ROBERT L. WARNOCK, JR., | : | |
| Defendant-Appellee. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32893

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellant

Gieske Law Office, LLC, Krista Gieske, 810 Sycamore Street, 3rd Floor, Cincinnati, Ohio 45202, for defendant-appellee

**S. POWELL, P.J.**

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Warren County Court of Common Pleas granting a motion to suppress filed by defendant-appellee, Robert L. Warnock, Jr., in a case involving a single charge of improperly handling a firearm in a motor vehicle. For the reasons outlined below, we reverse the suppression order and remand for further proceedings.

{¶ 2} On September 11, 2017, the Warren County Grand Jury returned an indictment charging Warnock with a single count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B), a fourth-degree felony. The charge arose after officers with the Monroe Police Department discovered a loaded firearm belonging to Warnock underneath the driver's seat of a vehicle parked in the parking lot of a local flea market. The firearm was discovered while the officers were conducting an investigation into an anonymous tip that two white males, one of whom was later identified as Warnock, were selling firearms out of the vehicle's trunk. The investigation proved fruitful after the officers approached the vehicle in question where they observed in plain view the butt of a black semiautomatic pistol protruding from underneath the driver's seat and onto the driver's side floorboard.[1] At the time the officers approached the vehicle, it is undisputed that the vehicle was unoccupied with the engine turned off.

{¶ 3} On September 29, 2017, Warnock entered a plea of not guilty and was released on bond. Warnock thereafter filed a motion to suppress. In support of this motion, Warnock argued there was "no lawful cause to stop the defendant, detain the defendant, and/or probable cause to arrest defendant without a warrant."

{¶ 4} On January 9, 2018, the trial court held a hearing on Warnock's motion to suppress. As part of this hearing, one of the officers dispatched to the scene testified to looking through the vehicle's windows where he observed in plain view the butt of a firearm protruding from underneath the driver's seat and onto the driver's side floorboard. As this officer testified:

> Q: Now, at this point had you opened the vehicle? Were – or how was it that you came to observe [the firearm]?
>
> A: Just looking through the windows from the outside of the

---

1. The record indicates the officers also observed in plain view several open cans of beer on the vehicle's front passenger's side floorboard.

- 2 -

vehicle. We never entered the vehicle to rummage through anything. It was all in plain view from the exterior of the vehicle.

{¶ 5} On January 29, 2018, the trial court issued a decision and entry granting Warnock's motion to suppress. In so holding, the trial court determined that "in order to approach the [vehicle], the officers needed some lawful reason under the Fourth Amendment." The trial court also determined that "the Monroe police officers' approach and visual inspection of the interior of the [vehicle], based solely on the tip of an anonymous complainant, was not based upon a reasonable suspicion to justify an investigatory stop."

{¶ 6} The state now appeals from the trial court's decision granting Warnock's motion to suppress, raising the following single assignment of error for review.

{¶ 7} THE TRIAL COURT APPLIED AN INCORRECT STANDARD OF LAW TO SUPPRESS THE EVIDENCE. POLICE OFFICERS ARE NOT REQUIRED TO HAVE REASONABLE SUSPICION BEFORE THEY CAN APPROACH AN UNOCCUPIED VEHICLE PARKED IN A PUBLIC PLACE AND LOOK INSIDE.

{¶ 8} In its single assignment of error, the state argues the trial court erred by granting Warnock's motion to suppress. We agree.

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court,

however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 10} As noted above, in granting Warnock's motion to suppress, the trial court determined that, "in order to approach the [vehicle], the officers needed some lawful reason under the Fourth Amendment." The trial court also determined that "the Monroe police officers' approach and visual inspection of the interior of the [vehicle], based solely on the tip of an anonymous complainant, was not based upon a reasonable suspicion to justify an investigatory stop." We disagree with the trial court's assertions.

{¶ 11} The record indicates the officers approached an unoccupied vehicle while it was parked in the parking lot of a local flea market after receiving an anonymous tip from a concerned citizen that two white males, one of whom was later identified as Warnock, were selling firearms out of the vehicle's trunk. Contrary to the trial court's decision, this was neither a search nor a seizure subject to the protections afforded to individuals by the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Ohio Constitution. This is because, as noted by the Ohio Supreme Court, the "police are free to observe whatever may be seen from a place where they are entitled to be." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, ¶ 15; *see, e.g., State v. D'Eloia*, 12th Dist. Butler No. CA96-12-260, 1997 Ohio App. LEXIS 1557, *5 (Apr. 21, 1997) ("[b]y parking the car in the public park, its occupants, including appellant, shed their expectation of privacy as to the exterior of the car and so much of its interior as could be readily viewed from the public street"); *State v. Bazrawi*, 10th Dist. Franklin No. 12AP-1043, 2013-Ohio-3015, ¶ 16 (appellant had no legitimate expectation of privacy of a vehicle's interior that could be viewed from outside the vehicle by either an inquisitive passerby or diligent police officers).

{¶ 12} Given the case law contrary to the trial court's decision, Warnock concedes that the trial court's decision granting Warnock's motion to suppress on that basis was in error. Specifically, as Warnock readily acknowledges as part of his appellate brief, "[c]ase law supports that the officers' initial visual inspection of the interior of the parked, unoccupied [vehicle] was not a 'stop' or 'search' as contemplated by the Fourth Amendment jurisprudence." However, although conceding error, Warnock nevertheless argues the trial court's decision does not mandate a reversal since the trial court's decision was legally correct on other grounds. "[A]n appellate court will not reverse a judgment that is based on erroneous reasoning if that judgment is otherwise correct, that is, it achieves the right result for the wrong reason." *State v. Adams*, 12th Dist. Butler No. CA2010-12-321, 2011-Ohio-1721, ¶ 22. This is not one of those cases.

{¶ 13} As noted above, after receiving an anonymous tip from a concerned citizen that two white males, one of whom was later identified as Warnock, were selling firearms out of the trunk of a vehicle parked in the parking lot at a local flea market, the officers approached the vehicle, which was unoccupied with the engine off, and looked through the vehicle's windows. Upon looking through the vehicle's windows, the officers observed in plain view the butt of a black semiautomatic pistol protruding from underneath the vehicle's driver's seat and onto the driver's side floorboard. Regardless of whether the firearm was loaded or unloaded, this discovery provided the officers with, at worst, a reasonable, articulable suspicion that the vehicle's then unknown occupants were engaged in criminal behavior by improperly handling the firearm within a motor vehicle in violation of R.C. 2923.16(B) or (C).

{¶ 14} However, instead of immediately gaining entry to the vehicle and seizing the firearm that could be seen in plain view, the officers conducted further investigation – including a subsequent consensual encounter with Warnock as he and the vehicle's other

- 5 -

occupant were unloading additional firearms from the vehicle's trunk – from which the officers learned that neither Warnock nor the vehicle's other occupant had a concealed carry permit.[2] Upon learning that neither Warnock nor the vehicle's other occupant had a concealed carry permit, the officers had probable cause to believe Warnock, the vehicle's other occupant, or both were in violation of R.C. 2923.16(B) or (C) by improperly handling a firearm in the vehicle, seize the firearm that they had observed in plain view protruding from underneath the vehicle's driver's side seat, and conduct a further search of the vehicle's passenger compartment for contraband. It is undisputed that this search lead to the discovery of an additional firearm that Warnock, after waiving his *Miranda* rights, admitted belonged to him. Both firearms seized by the officers were found to be loaded.

{¶ 15} After a full and thorough review of the record, we find none of the officers' conduct in this case ran afoul of the protections afforded to individuals by the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Ohio Constitution. Therefore, because we find the officers acted lawfully at all times relevant, including by looking through the vehicle's windows, the trial court's decision granting Warnock's motion to suppress was improper and must be reversed. Accordingly, finding merit to the state's single assignment of error, the state's single assignment of error is sustained, and this matter is reversed and remanded for further proceedings.

{¶ 16} Judgment reversed and remanded.

HENDRICKSON and M. POWELL, JJ., concur.

---

2. Warnock claims his encounter with the officers was not consensual but rather a seizure implicating Fourth Amendment protections. The record does not support Warnock's claim for the record is clear that it was Warnock and the vehicle's other occupant who voluntarily approached the officers after noticing the officers walking towards them while they were removing numerous other firearms from the vehicle's trunk. Therefore, contrary to Warnock's claim, the officers initial contact with him was a consensual encounter, not a stop or seizure that implicates Fourth Amendment scrutiny. *See Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382 (1991) ("police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions"); *see, e.g., State v. Brown*, 12th Dist. Clermont No. CA2001-04-047, 2001 Ohio App. LEXIS 5476, *8-9 (Dec. 10, 2001) (consensual encounter between officer and appellant where appellant was observed sitting in a vehicle parked in a parking lot late at night).