[Cite as *State v. Maddox*, 2021-Ohio-586.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-72 |
| v. | : | (C.P.C. No. 16CR-6953) |
| Dai'zhon L. Maddox, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 4, 2021

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Daniel J. Stanley*, for appellee. **Argued:** *Daniel J. Stanley*.

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann*.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Dai'zhon L. Maddox, appeals from a judgment of the Franklin County Court of Common Pleas convicting appellant of possession of cocaine with a firearm specification, possession of heroin with a firearm specification, carrying a concealed weapon, and improper handling of a firearm in a motor vehicle. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On December 16, 2016, a Franklin County Grand Jury indicted appellant on charges of possession of cocaine in violation of R.C. 2925.11, a felony of the first degree; possession of heroin in violation of R.C. 2925.11, a felony of the second degree; carrying a concealed weapon in violation of R.C. 2923.12, a felony of the fourth degree; and improper

handling of a firearm in a motor vehicle in violation of R.C. 2923.16, a felony of the fourth degree. Each of the drug possession charges was accompanied by a firearm specification. Appellant was separately charged with driving under suspension and failure to signal.

{¶ 3} On April 15, 2017, appellant filed a motion to suppress evidence supporting the drug and weapons charges arguing that the warrantless search of his vehicle violated the Fourth and Fourteenth Amendments to the United States Constitution. On November 28 and 29, 2017, the trial court held an evidentiary hearing on the motion. The following facts were developed at the suppression hearing.

{¶ 4} On July 7, 2016, Officers Brandon Bright and Michael Laird of the Columbus Police Department ("CPD") were on patrol in a marked CPD cruiser when they observed a vehicle fail to signal a turn. The officers activated the overhead beacons and audible siren on their cruiser, signaling the driver to stop. The operator, later identified as appellant, slowed his vehicle to a stop. At the hearing, Laird described the traffic stop as follows:

> Q. Okay. And, on that day, did you have occasion, you and Officer Bright, to do a traffic stop involving Dai'zhon Maddox?
>
> A. Yes, we did.
>
> Q. Tell us about it.
>
> A. We were traveling on -- we were patrolling the area of Main and Kelton. We were traveling on Main Street.
>
> We observed a vehicle turn northbound on Berkeley from Main Street. We saw the vehicle fail to signal as it turned eastbound on Bryden Road from Berkeley Road.
>
> * * *
>
> During that traffic stop, we saw only one occupant inside the vehicle. We saw the driver make multiple movements towards the center console and the glove box of the vehicle as it was slow to stop. The car eventually stopped on Fairwood south of Bryden.
>
> We made contact with the driver. My partner and I -- or I smelled immediately a fresh odor of marijuana coming from the vehicle.
>
> * * *
>
> Q. So --
>
> A. I smelled an odor of fresh marijuana coming from the vehicle. *I could see that the driver was extremely nervous.*

> *We had the driver exit the vehicle. Asked him if he had any marijuana. He said he had it in his pocket. My partner retrieved the marijuana at that point in time.*

(Emphasis added.) (Nov. 28, 2017 Tr. at 9-10.)

{¶ 5} Bright's testimony as to the relevant sequence of events was essentially the same as Laird's. Bright testified as follows:

> A. We approached the vehicle. As we approached the vehicle to advise him of the reason of the stop, we smelled marijuana coming from the vehicle. *We removed him from the vehicle, and I asked him, do you have -- or I said, "I smell marijuana in the vehicle." He said, "I have marijuana in my pocket." And we removed the marijuana --*
>
> * * *
>
> Q. Okay. And then what happened?
>
> A. At that point, Officer Laird escorted Mr. Maddox back to the cruiser.
>
> *I began to search the vehicle because there was marijuana on his person.* I located an empty Glock magazine that would belong to a gun in the center console. I continued my search in the area that I observed Mr. Maddox reaching across the center console into the passenger glove compartment where inside there was a plastic baggie, like, a white Kroger bag or where you would see, like, a grocery-style bag.

(Emphasis added.) (Nov. 28, 2017 Tr. at 40-42.)

{¶ 6} When Bright tugged on the bag, it uncovered a "void" behind the glove compartment area, which held a firearm. (Nov. 28, 2017 Tr. at 43.) The bag itself contained substances Bright suspected to be cocaine and heroin. Laird performed a LEADS check and discovered appellant was not permitted to drive as his license was under suspension. The two officers then contacted a detective, secured the vehicle, and arrested appellant. There is no dispute the Kroger bag contained heroin and cocaine.

{¶ 7} At the hearing on the motion to suppress, appellant argued that the stop should have concluded as soon as appellant volunteered that he had raw marijuana in his pocket, and it was seized by the officers. The trial court announced its ruling on the motion as follows:

> I don't know and I really don't care whether he had the ability to search at that moment in time. When they stopped Mr. Maddox and Mr. Maddox got out of the vehicle he – and he got

out – they got him out because, number one, he was driving, and then they smelled marijuana. They inquired. He had marijuana on his person. They retrieved the marijuana. At a minimum, they had to determine whether or not he was driving validly or not. Fully permissible to move him from there to the vehicle to determine whether or not he had a valid driver's license and whether he was operating his vehicle in compliance with the law.

Once they made that determination, which they ultimately would have, he would – it – it would have determined that he was not operating appropriately. They would have had the ability to place him under arrest. Yes, I think they may have searched the vehicle prematurely, but their search of the vehicle would have occurred anyway because he was driving alone. He was going to be – he was being placed under arrest. The vehicle had to be secured. The vehicle had to be searched and inventoried if they were going to impound it or secure it.

Therefore, the Motion to Suppress is denied.

(Nov. 28, 2017 Tr. at 83-84.)

{¶ 8} Appellant subsequently entered a no contest plea to possession of cocaine with a firearm specification, possession of heroin with a firearm specification, carrying a concealed weapon, and improper handling of a firearm in a motor vehicle. The trial court sentenced appellant to a prison term of four years.

{¶ 9} Appellant did not file a timely notice of appeal to this court from the trial court's judgment. This court, however, granted appellant's App.R. 5(A) motion for leave to file a delayed appeal on concluding that appellant "has demonstrated a reasonable explanation for his failure to perfect a timely appeal." (May 3, 2019 Memo. Decision at 3.)

## II. ASSIGNMENTS OF ERROR

{¶ 10} Appellant assigns the following as trial court error:

[1.] The trial court erred in denying the Defendant's motion to suppress evidence obtained in violation of U.S. Const. Amend. IV, XIV, and Ohio Const. Art. I, §14.

[2.] Defense counsel rendered ineffective assistance at the hearing on the Defendant's motion to suppress unconstitutionally obtained evidence in violation of the Defendant's right to the assistance of counsel under U.S. Const. Amend. V, VI, and XIV, and Ohio Const. Art. I, §10 and 16.

### III. STANDARD OF REVIEW

{¶ 11} In *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, the Supreme Court of Ohio set out the appellate standard of review from a trial court decision on a motion to suppress. *State v. Lee*, 10th Dist. No. 18AP-666, 2019-Ohio-3904, ¶ 11, citing *State v. Morales*, 10th Dist. No. 17AP-807, 2018-Ohio-3687. In *Burnside*, the court stated:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.
>
> Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Id.* at ¶ 8-9.

### IV. LEGAL ANALYSIS

#### A. Appellant's First Assignment of Error

{¶ 12} In appellant's first assignment of error, appellant contends the trial court committed reversible error by denying his motion to suppress evidence obtained in the search of his vehicle. We disagree.

{¶ 13} In reviewing the judgment in this case, we are required to accept the trial court's findings of fact as true, but we must independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Burnside* at ¶ 11. It is also true that "[a] reviewing court is not authorized to reverse a correct judgment merely because it was reached for the wrong reason." *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, ¶ 46 (superseded by statute on other grounds). Stated another way, "[w]here the trial court enters a legally correct judgment but articulates an incorrect rationale for doing so, a court of appeals nonetheless affirms as a matter of law, because there has been no prejudice to the appealing party." *State v. Roberts*, 7th Dist. No. 14 CO 0004, 2016-Ohio-4806, ¶ 23, citing App.R. 12(B). Ohio courts of appeal have repeatedly applied this principle in the review of trial court rulings on motions to suppress. *Id.* at ¶ 23; *State v. Granados*, 5th Dist. No. 13-CA-50, 2014-Ohio-1758, ¶ 39; *State v. Warnock*, 12th

Dist. No. CA2018-01-016, 2018-Ohio-4481, ¶ 12; *State v. Treadwell*, 1st Dist. No. C-000497 (Mar. 23, 2001).

{¶ 14} Because the undisputed evidence presented at the suppression hearing establishes the officers had probable cause to search appellant's vehicle, we are compelled to affirm the judgment in this case notwithstanding the rationale announced by the trial court at the close of the suppression hearing.

{¶ 15} "In general, '[t]he Fourth Amendment of the United States Constitution, applied to the states through the Fourteenth Amendment, protects persons against unreasonable searches and seizures.' " *State v. Richardson*, 10th Dist. No. 15AP-870, 2016-Ohio-5801, ¶ 18, quoting *State v. Jones*, 9th Dist. No. 12CA010270, 2013-Ohio-2375, ¶ 8. For a search or seizure to be reasonable, it must be based on probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies. *State v. Battle*, 10th Dist. No. 10AP-1132, 2011-Ohio-6661, ¶ 26, citing *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). One of the exceptions to the Fourth Amendment mandates is the automobile exception. *State v. Welch*, 18 Ohio St.3d 88, 91 (1985), citing *Carroll v. United States*, 267 U.S. 132 (1925). Under the automobile exception, a warrantless search of a lawfully stopped automobile is not unreasonable within the meaning of the Fourth Amendment when law enforcement has probable cause to believe the vehicle contains contraband and exigent circumstances necessitate a search or seizure. *Welch* at 91. A vehicle's mobility is the traditional exigency for this exception to the warrant requirement, and no other exigency is required. *State v. Mills*, 62 Ohio St.3d 357, 367 (1992); *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *California v. Carney*, 471 U.S. 386, 393 (1985). Pursuant to the automobile exception, "the justification to conduct a warrantless search does not 'depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.' " *State v. Bazrawi*, 10th Dist. No. 12AP-1043, 2013-Ohio-3015, ¶ 24, quoting *U.S. v. Chadwick*, 433 U.S. 1, 12 (1977). "Instead, a vehicle is readily mobile if it has the inherent 'capacity' for mobility." (Emphasis omitted.) *Bazrawi* at ¶ 24, quoting *California v. Carney*, 471 U.S. 386, 390 (1985).

{¶ 16} Probable cause has been defined as " 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.' " (Emphasis sic.) *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998), quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990). "Probable cause exists when there is a ' "fair probability that contraband or evidence of a crime will be found in a particular place." ' " *Smith* at 1074, quoting *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir.1994), quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Determining whether probable cause existed at the time of the search is a ' "commonsense, practical question" to be judged from the "totality-of-the-circumstances." ' " *Smith* at 1074-75, quoting *Wright* at 1437, quoting *Gates* at 230. In determining whether probable cause exists, courts may not look to events that occurred after the search or to the subjective intent of the officers; instead, we look to the objective facts known to the officers at the time of the search. *Smith* at 1075, citing *United States v. Ferguson*, 8 F.3d 385, 391-92 (6th Cir.1993) (en banc).

{¶ 17} In *Moore*, a police officer stopped the defendant for running a red light. When the defendant rolled down his window, the officer "detected a strong odor of fresh burnt marijuana emanating from the vehicle" and also smelled it on defendant's person when he stepped out of the vehicle. *Id.* at 47. The officer searched the defendant's person and found drug paraphernalia and then searched the defendant's vehicle and found a burnt marijuana cigarette in the ashtray. The trial court suppressed the evidence from both searches, but the appellate court reversed the suppression of evidence from the vehicle. *Id.* The Supreme Court upheld the search of the vehicle in concluding that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement." *Id.* at 48. The *Moore* court noted that probable cause is "a term that has been defined as 'a reasonable ground for belief of guilt.' " *Id.* at 49, quoting *Carroll* at 161. The court upheld the warrantless search of the vehicle operator "on the basis of the automobile exception and exigent circumstances." *Moore* at 53.

{¶ 18} *Moore* stands for the proposition that law enforcement need not observe tangible evidence of drug use during a lawful traffic stop in order for law enforcement to form a reasonable belief that the vehicle operator is guilty of a drug-related offense. *Id.* at 48. In other words, the officer in *Moore* did not need to see marijuana in order to have

probable cause to believe the defendant's vehicle contained contraband.  The *Moore* court then applied the well-recognized exception to the exclusionary rule which permits law enforcement to conduct a warrantless search of a vehicle because the mobility of vehicles makes obtaining a warrant impracticable and because people have a lesser expectation of privacy in a vehicle.  *Id.*, 90 Ohio St.3d at 51.  *See also Carroll*; *Chambers v. Maroney*, 399 U.S. 42 (1970); *Cardwell v. Lewis*, 417 U.S. 583 (1974).

{¶ 19} Here, the testimony that appellant voluntarily produced a small amount of marijuana on exiting the vehicle is undisputed.  At that point, tangible physical evidence of drug possession by the sole occupant of the vehicle had been observed by two police officers in the course of a lawful traffic stop.  Additionally, both officers testified that as appellant's vehicle slowed, they observed appellant make multiple movements towards the center console and the glove box of the vehicle.  Both officers testified they detected the smell of raw marijuana coming from the vehicle, and Blaine testified that, after exiting the vehicle, appellant "was being very nervous, looking around almost as he was going to maybe take off on foot and flee, heart racing, sweating profusely."  (Nov. 28, 2017 Tr. at 10.)  Both officers were familiar with the smell of raw marijuana.  Under similar circumstances, Ohio courts have found that a vehicle search is supported by probable cause.  *See*, *e.g.*, *State v. Tompkins*, 12th Dist. No. CA2000-08-044 (Oct. 1, 2001) (driver's furtive movements towards center console, his nervousness, and voluntary production of drugs from center console gave probable cause to search vehicle during lawful traffic stop); *State v. Young*, 12th Dist. No. CA2011-06-066, 2012-Ohio-3131, ¶ 33 (where officers saw the suspect furtively trying to reach his jacket in the back seat of the minivan and the suspect admitted that he had concealed marijuana in the jacket, there was "no doubt that the officers had probable cause to believe the minivan contained evidence of contraband"); *State v. Gartrell*, 3d Dist. No. 9-14-02, 2014-Ohio-5203, ¶ 59 ("a vehicle occupant's production of drugs gives an officer probable cause to believe the vehicle contains evidence of contraband"); *State v. Donaldson*, 6th Dist. No. WD-18-034, 2019-Ohio-232, ¶ 29 ("Ohio courts have held that the production of drugs by an occupant of a vehicle independently

provides an officer with additional probable cause to believe that the vehicle contains evidence of contraband.").[1]

{¶ 20} Based on these undisputed facts, there can be no question the officers had probable cause to believe appellant's vehicle contained contraband. *Moore* at 48. Because the automobile exception to the warrant requirement applied in this case, the warrantless search of appellant's vehicle was lawful. *Id.* at 53. Furthermore, when a police officer has probable cause to believe a vehicle contains evidence of a crime, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search. *United States v. Ross*, 456 U.S. 798 (1982); *Welch*.

{¶ 21} In similar circumstances, the more problematic issue for the courts has been the constitutionality of an initial search of the vehicle occupant. *See Moore* at 51. As the *Moore* court noted, even in cases where probable cause for a vehicle search exists, law enforcement must independently justify a search of the vehicle operator or other occupants. *Id.* at 52, citing examples of exigent circumstances. In this case, however, appellant was the sole occupant of the vehicle, and he voluntarily surrendered the evidence of criminal activity without the need for a search of his person.

{¶ 22} The undisputed testimony at the suppression hearing established that when the officers inquired about marijuana after detecting the odor of marijuana coming from appellant's vehicle, appellant voluntarily surrendered a small amount of marijuana to the officers on exiting his vehicle during a lawful traffic stop. Thus, the facts produced at the suppression hearing require the conclusion that Bright had probable cause to search appellant's vehicle, and the warrantless search was justified under the automobile exception to the exclusionary rule.

{¶ 23} We find no merit in appellant's argument at the suppression hearing that once appellant voluntarily surrendered the marijuana, the officers were required to stop their investigation and simply charge appellant with misdemeanor drug possession. To the contrary, when appellant voluntarily surrendered the marijuana, officers had probable cause to believe appellant's vehicle contained other evidence of a crime. The subsequent

---

[1] Though certain facts in *Gartrell* and *Donaldson* suggest that consent may have provided law enforcement with additional grounds to search the vehicles, probable cause was the justification for the warrantless vehicle search in both cases, not consent.

warrantless search of the vehicle was conducted pursuant to the automobile exception. Under the rule of law advocated by appellant, a vehicle operator might avoid a search of the vehicle for illegal drugs during a lawful traffic stop by voluntarily surrendering a small amount of an illegal substance to law enforcement. Ohio law does not support such an absurd result. *Donaldson* at ¶ 27 ("probable cause that was created by the smell of raw marijuana was vitiated once he provided the vial of marijuana to [the officer]"). *See also United States v. Deysie*, D.Ariz. No. CR-14-8112-001-PCT-G (Aug. 7, 2014) ("[A] person stopped by officers cannot preempt a search and remove probable cause by volunteering some contraband to the officer. * * * [The officer] did not have to accept [the defendant's] claim that all of his marijuana was in the bag he handed over.").

{¶ 24} On appeal, appellant challenges the credibility of the officers' testimonies that they smelled marijuana as they approached his vehicle and that appellant handed over marijuana upon request. Appellant argues that if these testimonies are not credible, the search of the vehicle cannot be justified under the "plain smell" exception to the warrant requirement. (Appellant's Brief at 11, 14.) In denying the motion to suppress, however, the trial court found as follows: "When they stopped Mr. Maddox and Mr. Maddox got out of the vehicle, he – and he got out – they got him out because, number one, he was driving, and then they smelled marijuana. They inquired. He had marijuana on his person. They retrieved the marijuana." (Nov. 28, 2017 Tr. at 83.)

{¶ 25} As previously noted, "[w]hen considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside*, 2003-Ohio-5372, at ¶ 8. Because the trial court's findings are supported by the testimony of the two officers, we accept the trial court's findings.

{¶ 26} Appellant also argues on appeal that the trial court erred when it determined that the warrantless search of appellant's vehicle was justified by events that occurred simultaneously or subsequent to the search, such as the discovery that appellant was an unlicensed driver. Because we have determined the warrantless search in this case was supported by probable cause and the automobile exception to the exclusionary rule, it matters not whether other events occurred simultaneously or subsequently that may have

justified the warrantless search of the vehicle on other grounds. *Smith*, 136 F.3d at 1074; *Ferguson*, 8 F.3d at 391-92. Accordingly, even though the trial court predicated the denial of the motion to suppress on the inevitable discovery doctrine and a search incident to arrest, the fact remains the officers had probable cause to search appellant's vehicle following the lawful traffic stop based on appellant's furtive movements as the vehicle slowed, the smell of raw marijuana coming from the vehicle, appellant's nervousness after exiting the vehicle, and undisputed evidence appellant had marijuana in his possession while operating the vehicle. As an appellate court, we are "not authorized to reverse a correct judgment merely because it was reached for the wrong reason." *Lozier*, 2004-Ohio-732, at ¶ 46.

{¶ 27} Contrary to the view expressed by the dissent, we are not relying on facts outside the record in affirming the trial court judgment in this case. Both officers testified that they smelled the odor of raw marijuana coming from the vehicle and that appellant voluntarily surrendered a small amount of marijuana after he exited his vehicle. In adopting the officer's testimony in the statement of facts, the trial court clearly believed their version of the events. Our standard of review does not permit us to disbelieve the unrebutted testimony of the two officers and predicate reversal on a lack of credibility. Based on the totality of the circumstances, particularly the testimony that Bright smelled marijuana in or about appellant's vehicle after appellant had been "removed * * * from the vehicle," and our application of a de novo standard of review on questions of law, we hold the trial court did not err when it denied appellant's motion to suppress because the search of appellant's vehicle was supported by probable cause. (Nov. 28, 2017 Tr. at 40.)

{¶ 28} For the foregoing reasons, we overrule appellant's first assignment of error.

## B. Appellant's Second Assignment of Error

{¶ 29} In his second assignment of error, appellant contends his trial counsel rendered ineffective assistance at the hearing on the motion to suppress. We disagree.

{¶ 30} To establish a claim of ineffective assistance of counsel, appellant must demonstrate counsel's performance was deficient and appellant was prejudiced by counsel's deficient performance. *State v. Young*, 10th Dist. No. 18AP-630, 2020-Ohio-462, ¶ 98, citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The failure to make either showing defeats a

claim of ineffective assistance of counsel." *Young* at ¶ 98, citing *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), citing *Strickland* at 697.

{¶ 31} In order to show counsel's performance was deficient, the appellant must prove that counsel's performance fell below an objective standard of reasonable representation. *Young*, 2020-Ohio-462, at ¶ 99, citing *Jackson* at ¶ 133. "In other words, counsel made errors ' "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." ' " *Young* at ¶ 99, quoting *State v. Thompson*, 10th Dist. No. 18AP-211, 2019-Ohio-2525, ¶ 13, quoting *Strickland* at 687. This standard requires appellant to overcome the strong presumption that defense counsel's performance fell within a wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101, citing *Strickland* at 689. "[T]o show prejudice, appellant must establish there is a reasonable probability that but for his counsel's errors, the result of the trial would have been different." *State v. Kennard*, 10th Dist. No. 15AP-776, 2016-Ohio-2811, ¶ 18, citing *Strickland* at 694.

{¶ 32} We cannot agree counsel's performance at the suppression hearing was deficient. At a minimum, trial counsel convinced the trial court to focus on legal rules that may not have been applicable in light of the undisputed evidence presented at the suppression hearing. Moreover, even if we agreed with appellant that counsel performed poorly, we have determined that appellant's motion to suppress was without merit given the undisputed facts in the case. Thus, the record does not support appellant's ineffective assistance claim.

{¶ 33} For the foregoing reasons, we overrule appellant's second assignment of error.

## V. CONCLUSION

{¶ 34} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, J., concurs.
BEATTY BLUNT, J., dissents.

BEATTY BLUNT, J., dissenting.

{¶ 35} I must respectfully dissent. The evidence presented by the state did not justify the warrantless search of Maddox's vehicle. When the search commenced the officers had—in totality—the following evidence:

> 1. An automobile was witnessed committing a minor misdemeanor traffic violation;
>
> 2. Maddox was driving the automobile at the time of the violation; and
>
> 3. The officers smelled raw marijuana coming from the vehicle and removed Maddox from the vehicle, at which point he surrendered the marijuana.[2]

To be certain, I agree that this evidence undoubtedly creates a reasonable suspicion for further investigation. But the majority instead holds that it is equivalent to the quantum of evidence that would have been required to support the issuance of a search warrant. I cannot accept this conclusion, nor the analysis required to reach it.

{¶ 36} While it is true that probable cause analysis is a "practical, common-sense decision whether * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), that decision is one that should not often be made by officers on the street. Rather, the analysis and inferences from the facts must generally " 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' " *Id.* at 240, quoting *Johnson v. United States*, 333 U.S. 10, 13-14 (1948). It is only when a specific exception to the warrant requirement applies that a post-hoc analysis of whether an officer had probable cause to conduct a warrantless search comes into play.

---

[2] The majority suggests that Officer Bright "smelled marijuana in or about appellant's vehicle *after* appellant had been 'removed * * * from the vehicle.' " (Emphasis added.) *Supra* at ¶ 27 If this were an accurate interpretation of Officer Bright's testimony, I would not have issued this dissent. But Officer Bright did not so testify; the full quote reads: "As we approached the vehicle to advise him of the reason for the stop, *we smelled marijuana coming from the vehicle. We removed him from the vehicle, and I asked him do you have – or I said, 'I smell marijuana in the vehicle.'* He said, 'I have marijuana in my pocket.' And we removed the marijuana." (Emphasis added.) Tr. at 40 Officer Bright undoubtedly testified that after he removed Maddox from the vehicle was when he *informed* Maddox that he had smelled marijuana coming from the vehicle, but it is a significant stretch to conclude that Officer Bright actually testified that he continued to smell marijuana *coming from the vehicle* after he removed Maddox.

{¶ 37} Here, the state relied upon the "automobile exception" described in *United States v. Ross*, 456 U.S. 798, 807 (1982), and upon the so-called "plain smell" exception recognized in *State v. Moore*, 90 Ohio St.3d 47 (2000), to justify both the fact that a magistrate was not required to issue a warrant prior to a search of Maddox's car, and also the conclusion that the search was supported by probable cause. But in contrast to the rule of *Ross*, nothing was presented at the suppression hearing to establish that the officers could not secure the vehicle or a warrant to search it. The United States Supreme Court has consistently held that and " '[in] cases where the securing of a warrant is reasonably practicable, it must be used.' " *Ross*, 456 U.S. at 807, quoting *Carroll v. United States*, 267 U.S. 132, 156 (1925). And because Maddox was compliant and the officers had no reason to believe that he would flee or resist investigatory detention,[3] it seems clear that a warrant could have been sought prior to a search.

{¶ 38} While the majority correctly notes that the " 'automobile exception' has no separate exigency requirement," *Maryland v. Dyson*, 527 U.S. 465, 466 (1999), any warrantless search of a vehicle must still be supported by probable cause. *See id.* (noting that there was " 'abundant probable cause' that the car contained contraband" and holding that "[t]his finding alone satisfies the automobile exception to the Fourth Amendment's warrant requirement * * *".) And here, probable cause was lacking. In contrast to the cases, there is no evidence in this record that *the car itself* was the source of any odor. *Compare Moore* at 48 (noting evidence of a "strong odor of burnt marijuana in the vehicle") with Tr. at 22 (testimony of Officer Laird affirming that Maddox "the marijuana [I] smelled, [Maddox] voluntarily gave it to [me]") and *id.* at 42 testimony of Officer Bright that "I began to search the vehicle because there was marijuana on his person."). Once Maddox voluntarily surrendered the marijuana, the officers' investigation for that crime was

---

[3] The majority states that it has accepted the trial court's findings regarding the credibility of the witnesses. *Supra* at ¶ 13. But in its analysis, the majority relies heavily upon testimony from the officers that upon exiting the vehicle Maddox " 'was being very nervous, looking around almost as he was going to maybe take off on foot and flee, heart racing, sweating profusely.' " *Supra* at ¶ 19, quoting Tr. at 10. But the majority fails to mention that the trial court rejected the credibility of this testimony ("Well you know, counsel, let me say this. With respect to the nervous, the sweating, and all of that, I could care less about that."). (Tr. at 71-73.) It is in part for this reason that the trial court apparently concluded, based on the totality of the evidence, that the officers likely did not have probable cause at the time the search commenced and instead relied upon the inevitable discovery rule.

complete, and there is no evidence that they had a reason to suspect him of any other crimes until after they conducted the warrantless search.

{¶ 39} The trial court offered a different justification for a warrantless search concluding that Maddox "was going to be – he was being placed under arrest. The vehicle had to be secured. The vehicle had to be searched and inventoried if they were going to impound it or secure it." (Tr. at 83-84.) But the trial court's approach, which relies upon the "inevitable discovery" rule and the "inventory exception" to the warrant requirement, is also flawed. *See generally South Dakota v. Opperman*, 428 U.S. 364 (1976) (describing inventory exception), and *State v. Perkins*, 18 Ohio St.3d 193, 196 (1985) (describing inevitable discovery rule). While there is some equivocal testimony from both officers that Maddox was going to be arrested for the license violation, at the time that decision was made, Officer Bright had already searched Maddox's vehicle and discovered the gun and drugs. And although Maddox's car *could* have been impounded as a result of the license violation, there is no evidence in the record that either officer *would* have impounded the car for that offense. Given that the car was stopped on a two-way road with parking on both sides*, see* Tr. at 34, the officers might well have determined that the car was safely parked and did not need to be taken into custody. And most damning of all, the state failed to present any policy, standard practice, or other evidence to describe when either an arrest for a misdemeanor traffic charge must be made or when a roadside inventory search of an automobile must be conducted. *Compare Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, ¶ 11 (holding that "a routine inventory search of a *lawfully impounded* vehicle is not unreasonable within the meaning of the Fourth Amendment when performed *pursuant to standard police practice* and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle.") (Emphasis added.) Instead, all of the evidence and testimony instead points to a series of purely discretionary decisions by both officers—fatally undermining the "inevitability" of the discovery of the gun and drugs in Maddox's vehicle.

{¶ 40} The majority correctly rejects the trial court's "inevitable discovery" rationale, but instead accepts the position that the trial court itself rejected: that the search of the vehicle was supported by probable cause based on the smell of marijuana coming from Maddox. To support this conclusion, the majority cites a number of cases that are easily

distinguishable from this situation. *See supra* at ¶ 19. For example, the defendant in *State v. Tompkins*, 12th Dist. No. CA2000-08-044 (Oct. 1, 2001) also voluntarily surrendered marijuana to the investigating officers, but he did so while he was still in the vehicle and in fact retrieved the contraband from a compartment in the vehicle itself. *Id.* Similarly, in *State v. Young*, 12th. Dist. No. CA2011-06-066, 2012-Ohio-3131, after the defendant was removed from his vehicle and patted down for safety following a canine alert on another car he had just occupied and officers witnessing a suspected drug transaction inside the stopped vehicle the defendant admitted that he had stashed marijuana in his jacket, which was located in the backseat of the vehicle. The majority relies upon *State v. Gartrell*, 3d Dist. No. 9-14-02, 2014-Ohio-5203, for the proposition that "a vehicle occupant's production of drugs gives an officer probable cause to believe the vehicle contains evidence of contraband," *id.* at ¶ 59, but failed to observe that the challenged searches of the automobile and luggage containing contraband in that case were both based on consent. *Id.* at ¶ 37. The majority's reliance on *State v. Donaldson*, 6th Dist. No. WD-18-034, 2019-Ohio-232, is similarly problematic, as that search was also justifiable based on the consent of the defendant as well as his admission that he possessed marijuana prior to his removal from the vehicle. *See id.* at ¶ 4-7. Moreover, the majority has totally obscured the fact that the marijuana upon which its analysis *was not presented* at the suppression hearing and Maddox was not charged with possessing it. *See, e.g.*, Tr. at 33, 36. Other than the officers' testimony, there is no evidence that any marijuana was even seized from Maddox. The trial court was left to speculate based on different estimates by the two officers how much marijuana Maddox had allegedly possessed. *Compare id.* at 36 with *id at 4*8. For all these reasons, I do not believe that the majority's position can be legally or practically justified.[4]

{¶ 41} Had the state presented any additional evidence at the hearing to suggest that Maddox's vehicle contained additional contraband or further evidence of the crimes for

---

[4] The majority has also failed to consider what would happen if this stop occurred after the effective date of S.B. No. 57, which legalized hemp in this state. *See* R.C. 3719.01(O) (excluding "hemp" from the definition of marijuana) and *Columbus City Attorney Zach Klein Issues Policy Dismissing Misdemeanor Marijuana Charges* (Aug. 7, 2010), City Attorney Press Releases, available online at https://city-attorney.columbus.gov/pdf/press/Policy872019.pdf (accessed on March 2, 2021) (observing S.B. No. 57 "requires a distinction between hemp and marijuana" that "our current drug testing technology is not able to differentiate"). Under the majority's rule, would the officers *lack* probable cause to search, since they now lack evidence of marijuana possession?

which he was being investigated, then the probable cause standard would be met, the warrantless search of the vehicle would have been justified, and the evidence discovered would be admissible under the automobile exception to the exclusionary rule. I certainly understand the majority's reluctance to suppress the powerful evidence upon which Maddox was convicted, but the purpose of the exclusionary rule is to establish certain boundaries for evidence collection by law enforcement and to deter actions that go beyond those boundaries. I do not doubt that Officer Bright's search of Maddox's automobile was conducted based on his understanding of those boundaries and with the intention to abide by that understanding. But his understanding was incorrect, as was the state's argument in favor of the search, as is the majority's probable cause analysis. I accordingly dissent. I would sustain Maddox's first assignment of error and remand the case to the trial court to issue an order excluding the fruits of Officer Bright's search as well as other appropriate relief.

———————————