[Cite as *State v. Jones*, 2022-Ohio-561.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :          Case No.  20CA9

    v.                                  :

CLARENCE JONES,                         :          DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.                :

_____

APPEARANCES:

Roger Soroka and Joshua Bedtelyon, Columbus, Ohio, for
appellant.

Justin Lovett, Jackson County Prosecuting Attorney, and Rachel
E. Daehler, Jackson County Assistant Prosecuting Attorney,
Jackson, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:2-18-22
ABELE, J.

{¶1}  This is an appeal from a Jackson County Common Pleas

Court judgment of conviction and sentence.  The trial court

found Clarence Jones, defendant below and appellant herein,

guilty of cocaine possession and sentenced him to serve eight

years in prison.

{¶2}  Appellant assigns the following error for review:

> "THE TRIAL COURT ERRED IN DISMISSING
> APPELLANT'S MOTION TO SUPPRESS EVIDENCE
> OBTAINED DURING AN UNLAWFUL SEARCH AND

SEIZURE WHICH VIOLATED APPELLANT'S FOURTH AMENDMENT RIGHTS."

**{¶3}** During an April 2018 traffic stop, Ohio State Highway Patrol Trooper Matthew Atwood discovered approximately 130 grams of cocaine in a metal box attached to the undercarriage of appellant's vehicle. A Jackson County Grand Jury later returned an indictment that charged appellant with (1) possession of cocaine, in violation of R.C. 2925.11(A); (2) trafficking in cocaine, in violation of R.C. 2925.03(A)(2); and (3) operating a vehicle with a hidden compartment, in violation of R.C. 2923.241(C). Each drug offense also included a major drug offender specification. Appellant entered not guilty pleas.

**{¶4}** On October 17, 2019, appellant filed a motion to suppress the evidence discovered during the traffic stop. In particular, appellant asserted that the trooper (1) did not have reasonable suspicion or probable cause to stop the vehicle, and (2) did not have probable cause to search the vehicle.

**{¶5}** On June 17, 2020, the trial court held a hearing to consider appellant's motion to suppress. Trooper Atwood testified that on April 18, 2018, he noticed a vehicle with a "dark window tint." Also, the vehicle's occupants appeared to lean back so far that he "couldn't see them" and that "it looked like * * * a driverless car." Atwood also noted that the

vehicle slowed as it passed the trooper's parked cruiser.  At that point, Atwood decided to investigate and followed the car.

**{¶6}**  Trooper Atwood followed the vehicle, he noticed the vehicle again slow down and depress the brakes.  At that point, Atwood observed that one brake light did not work and, based upon the missing brake light and dark window tint, he decided to stop the vehicle.

**{¶7}**  When Trooper Atwood reached the vehicle, he asked the driver (appellant) for his license, registration, and insurance. Atwood noticed that appellant and the passenger both were "breathing unusually heavily" and "were shaking."  Atwood explained that when appellant handed over his driver's license, his "hand was trembling" and the passenger "was starting to sweat."  Atwood also stated that the passenger did not make eye contact even though the trooper stood next to him.

**{¶8}**  Trooper Atwood asked appellant to exit the vehicle and to walk toward the cruiser.  Atwood then performed a pat-down search and placed appellant in the back of the cruiser.  After Atwood returned to the vehicle and asked the passenger for identification, that at this point the passenger's "sweat was now running down his face."  The passenger indicated that he had no identification and he also "was shifting around in his seat."

During the passenger's shifting, Atwood detected the odor of raw marijuana emanating from the vehicle.

**{¶9}** Trooper Atwood returned to his cruiser, read appellant his *Miranda* rights, and informed appellant that the trooper had detected the odor of marijuana and that he intended to search the vehicle. During the search, Atwood found a black magnetic box attached to the bottom of the vehicle that contained a sock. Inside the sock, a vacuum-sealed bag contained approximately 130 grams of crack cocaine.

**{¶10}** Trooper Atwood testified that he later measured the window tint and found that the tint provided 44% light transmission.

**{¶11}** After Trooper Atwood's testimony, the state rested. The court asked appellant's counsel whether they had "any issue with the probable cause for the stop" and appellant's counsel responded "No, Your Honor." Counsel instead agreed that the issue "is whether or not the officer had reasonable suspicion that additional criminal activity was afoot."

**{¶12}** The trial court subsequently overruled appellant's motion to suppress evidence. The court found that Trooper Atwood detected the odor of marijuana, and that the smell of

marijuana gave Atwood probable cause to search appellant's vehicle.

**{¶13}** On November 19, 2020, appellant entered a no-contest plea to cocaine possession. The trial court found appellant guilty of cocaine possession, dismissed the remaining counts and specifications, and sentenced appellant to serve eight years in prison. This appeal followed.

I

**{¶14}** In his sole assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress the evidence discovered during the traffic stop. Appellant contends that (1) the trooper did not have reasonable suspicion to stop the vehicle for a window-tint violation, and (2) even if the trooper had reasonable suspicion to stop the vehicle for a window-tint violation, the trooper impermissibly expanded the scope of the stop. Appellant argues that the trooper did not have reasonable suspicion that criminal activity was afoot so as to justify the expanded scope of the stop.

**{¶15}** Appellate review of a trial court's ruling on a motion to suppress evidence involves a mixed question of law and fact. *E.g., State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32; *State v. Burnside*, 100 Ohio St.3d 152, 2003-

Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Moore*, 2013-Ohio-5506, 5 N.E.3d 41 (4th Dist.), ¶ 7. Appellate courts thus "'must accept the trial court's findings of fact if they are supported by competent, credible evidence.'" *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12, quoting *Burnside* at ¶ 8. Accepting those facts as true, reviewing courts "'independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.'" *Id.*, quoting *Burnside* at ¶ 8.

**{¶16}** The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979); *State v. Gullett*, 78 Ohio App.3d 138, 143, 604 N.E.2d 176 (1992). "[S]earches [and seizures] conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98. "Once a warrantless search is

established, the burden of persuasion is on the state to show the validity of the search." *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988) (citation omitted).

**{¶17}** A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Id.* An officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred. *Id.* at 810 (citations omitted); *accord State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23; *Dayton v. Erickson*, 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091 (1996). Law enforcement officers also may stop a vehicle if they have reasonable suspicion "that criminal activity '"may be afoot."'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *accord State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 19 (officer may "make an investigatory stop, including a traffic

stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity").

{¶18} In the case sub judice, although appellant contends on appeal that the trooper lacked reasonable suspicion or probable cause to stop the vehicle, appellant chose not to contest the validity of the traffic stop during the suppression hearing. The trial court asked appellant's counsel about any issue with the vehicle stop, and counsel responded "No." In his post-hearing brief, however, appellant challenged the lawfulness of the initial stop of his vehicle. We therefore question whether appellant properly preserved the issue for purposes of appellate review. *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 19, citing *Wallace*, 37 Ohio St.3d at 218 (defendant may stipulate to, or narrow, the issues that trial court reviewing suppression motion must resolve and that "[a]rguments not made by the defendant at the suppression hearing are, therefore, deemed to have been waived").

{¶19} Nevertheless, we believe that Trooper Atwood articulated sufficient facts that gave him reasonable suspicion or probable cause to stop appellant's vehicle. Atwood stated that the window tint appeared darker than the legal limit and

that he noticed a defective brake light.  Either of these factors gave Atwood reasonable suspicion or probable cause to believe that appellant violated Ohio law.[1]  The trooper's stop, therefore, did not constitute an unconstitutional traffic stop. *E.g., State v. Hubbard*, 2d Dist. Montgomery No. 28941, 2021-Ohio-1740, ¶ 21 (holding "that a traffic stop for a suspected window-tint violation is lawful").

**{¶20}** Appellant next asserts that, even if the initial stop complied with the Fourth Amendment, Trooper Atwood violated the Fourth Amendment by expanding the scope of the stop.  Appellant argues that Atwood had no reason to remove appellant from the vehicle, to conduct a pat-down search for weapons, to place appellant in the back of the cruiser, and then to search appellant's vehicle.

**{¶21}** It is well-established that the scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop."  *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983);

---

*See* Ohio Adm.Code 4501-41-03(A)(2) and (3) (permitting tinted windows so long as 70% of light passes through a windshield and 50% of light passes through the front side windows); R.C. 4513.071 (requiring passenger vehicles to have two red brake lights).

*see also State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995).  This rule is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime.  *Sagamore Hills v. Eller*, 9th Dist. Summit No. 18495, 1997 WL 760693, *2 (Nov. 5, 1997); *see also Fairborn v. Orrick*, 49 Ohio App.3d 94, 95, 550 N.E.2d 488 (2d Dist.1988) (the "mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer 'open season' to investigate matters not reasonably within the scope of his suspicion").

**{¶22}** Thus, generally, "[w]hen a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates."  *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36, citing *State v. Carlson*, 102 Ohio App.3d 585, 598, 657 N.E.2d 591 (9th Dist.1995); *see also Rodriguez v. United States*, 575 U.S. 348, 355, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015) (part of officer's "mission" when conducting traffic stop is to check driver's license, determine

whether outstanding warrants exist, and examine vehicle registration and automobile insurance documents).  A traffic stop becomes "'unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation."  *Rodriguez*, 575 U.S. at 350, quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).  After "the reasonable * * * time for issuing [a] citation has [elapsed], an officer must have a reasonable articulable suspicion of illegal activity to continue the detention."  *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.).

**{¶23}** Thus, "[a]n officer may expand the scope of the stop and may continue to detain the vehicle without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot."  *State v. Rose*, 4th Dist. Highland No. 06CA5, 2006-Ohio-5292, ¶ 17, citing *State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762 (1997).  As the *Robinette* court explained,

> [w]hen a police officer's objective justification to
> continue detention of a person * * * is not related to
> the purpose of the original stop, and when that
> continued detention is not based on any articulable
> facts giving rise to a suspicion of some illegal
> activity justifying an extension of the detention, the

> continued detention to conduct a search constitutes an illegal seizure.

*Id.* at paragraph one of the syllabus.

**{¶24}** Conversely, "if a law enforcement officer, during a valid investigative stop, ascertains 'reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual.'" *Rose* at ¶ 17, quoting *Robinette* at 241.

**{¶25}** We additionally observe that traffic stops in general are "especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). For this reason, a law enforcement officer who lawfully detains a motor vehicle for a traffic violation "may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111, fn.6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *accord State v. Brown*, 4th Dist. Ross No. 18CA3644, 2019-Ohio-1112, ¶ 15. Furthermore, an officer need not have any suspicion that criminal activity might be afoot before the officer may order a driver to exit the vehicle. *State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993) (holding that "a *Mimms* order does not

have to be justified by any constitutional quantum of suspicion"). Instead, "[t]he government's 'legitimate and weighty' interest in officer safety * * * outweighs the 'de minimis' additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." *Arizona v. Johnson*, 555 U.S. 323, 330-31, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009), quoting *Mimms*, 434 U.S. at 110-111. Additionally, once the driver of a lawfully detained vehicle steps outside, the officer may conduct a limited pat-down search for weapons "if the officer reasonably concludes that the driver 'might be armed and presently dangerous.'" *Johnson*, 555 U.S. at 330-31, quoting *Mimms*, 434 U.S. at 112.

**{¶26}** In the case sub judice, we believe that the trial court correctly determined that the trooper's conduct did not violate the Fourth Amendment. First, under *Mimms* the trooper lawfully ordered appellant to exit the vehicle. At that time, the traffic stop had just begun and the trooper had yet to check appellant's driver's license or to check for outstanding warrants.

**{¶27}** After he asked appellant to exit the vehicle, Trooper Atwood performed a pat-down search and placed appellant in the cruiser. Even if Atwood lacked any valid reason for doing so,

no evidence was discovered during the pat-down search or in the cruiser after appellant exited.

**{¶28}** Immediately after he placed appellant in the cruiser, Trooper Atwood returned to appellant's vehicle to talk to the passenger and to obtain the passenger's identification. At that point, Atwood detected an odor of raw marijuana. When he detected the odor of raw marijuana, he had not yet completed the mission of the traffic stop or the routine procedures that accompany a traffic stop.

**{¶29}** Once Trooper Atwood detected the odor of raw marijuana, the trooper acquired probable cause to search appellant's vehicle. *E.g., State v. Moore*, 90 Ohio St.3d 47, 734 N.E.2d 804 (2000), syllabus ("[t]he smell of marijuana, alone, by a person qualified to recognize this odor, is sufficient to establish probable cause to conduct a search"); *State v. Brown*, 2d Dist. Montgomery No. 27377, 2017-Ohio-2880, ¶ 9 ("[a]ny odor of marijuana emanating from a legally stopped vehicle creates probable cause to believe that a violation of the law has occurred"). The trooper, therefore, did not unlawfully expand the scope of the stop by searching appellant's vehicle.

**{¶30}** We note appellant's concern that Trooper Atwood should have used the on-site drug-detection dog rather than conduct a manual search of the vehicle. Appellant has not, however, cited any authority to support his assertion that law enforcement officers must use a drug-detection dog if the dog already is on site before the officers may manually search a vehicle. We further note that Trooper Atwood stated that he "never" uses the drug-detection dog once he detects the odor of marijuana. Additionally, a few other courts have rejected similar challenges. *See State v. Ivery*, 11th Dist. Lake No. 2011-L-081, 2012-Ohio-1270, ¶ 29 (disagreeing with defendant's assertion that officer should have used on-site drug-detection dog to check the vehicle for narcotics when officer's detection of odor of marijuana already established probable cause for search); *United States v. Moxley*, 229 F.3d 1154, 2000 WL 1234320, *3 (6th Cir.2000) (when officer already had probable cause to search vehicle "[t]he result of the dog-sniff merely added icing to the proverbial cake"); *see also United States v. Davis*, 430 F.3d 345, 365-67 (6th Cir. 2005) (Sutton, J., concurring in part and dissenting in part) (citing litany of cases that support "a near universal recognition that a drug-sniffing dog's failure to alert does not necessarily destroy probable cause"); *United*

*States v. Frost*, 999 F.2d 737, 744 (3d Cir.1993) ("When one includes both the fact that the drug sniffing dog did not alert to the suitcase and the fact that drug couriers often mask the scent of drugs in suitcases so that a drug sniffing dog will not alert, the failure to alert to the suitcase is not inconsistent with the substantial probative thrust of information which [the officer] did include [in the warrant].").

{¶31} Appellant also contends that Trooper Atwood's testimony that he smelled the odor of raw marijuana is not credible. We again note, however, that the trial court, sitting as the trier of fact, is in the best position to evaluate witnesses credibility during a suppression hearing. We therefore must accept the trial court's factual finding that the trooper detected the odor of marijuana so long as competent, credible evidence supports it.

{¶32} In the case sub judice, we believe that competent, credible evidence supports the trial court's finding that the trooper detected the odor of marijuana. The trooper explained that he received training in detecting the odor of raw marijuana and that he has "been involved in hundreds of cases where marijuana was present and confirmed to be marijuana." The trooper stated that he noticed the odor of raw marijuana while

he spoke with the passenger after he placed appellant in the patrol cruiser. The trooper stated that he noticed the odor once the passenger started "to shift[] around in his seat" and that he again detected the odor when the passenger exited the vehicle.

**{¶33}** After appellant's counsel finished cross-examining Trooper Atwood about his testimony that he smelled the odor of raw marijuana, the trial court asked additional questions. The court asked whether the odor of raw marijuana could "linger." Atwood explained that it would depend upon "the amount and the * * * * quality of the marijuana."

**{¶34}** After our review, we believe that the foregoing testimony constitutes competent, credible evidence that the trooper detected the odor of raw marijuana. We do not find anything in the record to allow us to second-guess the trial court's credibility determination. *Ivery* at ¶ 28 (rejecting defendant's argument that officer's testimony that he recognized the odor of marijuana was not credible when trial court credited officer's testimony that he could identify the smell of marijuana "based on his training and experience"); *State v. Gonzales*, 6th Dist. No. WD-07-060, 2009-Ohio-168, ¶ 25 (reviewing court would not disturb trial court's finding that

officer was qualified and experienced in identifying the odor of marijuana).

**{¶35}** Furthermore, the fact that Trooper Atwood did not discover marijuana during the search of appellant's vehicle does not require the conclusion that the trooper lacked probable cause to search the vehicle based upon the odor of marijuana or that his testimony lacked credibility. *See generally United States v. Brown*, 250 F.3d 739, 2001 WL 274314, *1 (5th Cir.2001), quoting *United States v. Reed*, 882 F.2d 147, 149 (5th Cir.1989) (finding it irrelevant "'that the substance eventually discovered in the vehicle was cocaine, and that no marihuana was ever found'"). Rather, courts that are determining whether probable cause exists must evaluate "the objective facts known to the officers at the time of the search," and may not consider "events that occurred after the search." *State v. Maddox*, 10th Dist. Franklin No. 19AP-72, 2021-Ohio-586, 168 N.E.3d 613, ¶ 16, citing *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998); *accord Brown*, 250 F.3d 739, *1, quoting *Reed*, 882 F.2d at 149 ("'the presence or absence of probable cause to search is not determined by what the search does or does not ultimately reveal'"); *In re O.N.*, 8th Dist. Cuyahoga No. 107850, 2019-Ohio-4159, ¶ 15 (rejecting argument that smell of marijuana cannot

give rise to probable cause to search vehicle when officers do not find marijuana during subsequent search); *State v. Richmond*, 8th Dist. Cuyahoga No. 105036, 2017-Ohio-2860, ¶ 18, quoting *Moore*, 90 Ohio St.3d at 50 (observing that *Moore* does not require "'additional factors to corroborate the suspicion of the presence of marijuana'"); *see also State v. Arnold*, 2d Dist. Clark No. 2001 CA 55, 2002-Ohio-1779, *3 (Apr. 12, 2002) ("[t]he fact that no evidence of burnt marijuana was found in the vehicle is not determinative as *Moore* states that no additional factors other than the smell of the marijuana are needed for probable cause to conduct the search of a vehicle").

**{¶36}** Consequently, we do not agree with appellant that the trial court erred by overruling his motion to suppress the evidence discovered during the search of his vehicle.

**{¶37}** Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JACKSON, 20CA9

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.