[Cite as *State v. Netter*, 2024-Ohio-1068.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,          : CASE NO. 23CA4

    v.                           :

DARRELL LEE NETTER,                     : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Jayme Hartley Fountain, Assistant Prosecuting Attorney, Circleville, Ohio, for appellee.

Elizabeth N. Gaba, Columbus, Ohio, for appellant.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:3-20-24
ABELE, J.

{¶1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. Darrell Netter, defendant below and appellant herein, assigns the following errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED TO THE PREJUDICE OF
> DEFENDANT AND ABUSED ITS DISCRETION WHEN IT
> DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.
> ALL EVIDENCE OBTAINED AS A RESULT OF THE
> UNLAWFUL PURSUIT, UNLAWFUL STOP AND UNLAWFUL

SEARCH OF HOSTETTER'S VEHICLE, VIOLATED THE 4TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTIONS 14 AND 16 OF THE OHIO CONSTITUTION."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT AND ABUSED ITS DISCRETION WHEN IT IMPOSED A SENTENCE MORE THAN 50% LONGER THAN THE STATE'S RECOMMENDATION, AND THE COURT'S SENTENCE WAS OPPRESSIVE AND AN ABUSE OF DISCRETION IN VIOLATION OF DEFENDANT'S RIGHTS UNDER THE 8TH AMENDMENT OF THE UNITED STATES CONSTITUTION."

{¶2} During a March 2022 traffic stop, Ohio State Highway Patrol Trooper Spencer Large discovered cocaine in a vehicle that transported appellant. A Pickaway County Grand Jury returned an indictment that charged appellant with (1) one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2), and (2) possession of cocaine in violation of R.C. 2925.11(A), both first-degree felonies. Appellant entered not guilty pleas.

{¶3} Subsequently, appellant filed a motion to suppress the evidence discovered during the traffic stop. At the suppression hearing, Trooper Large testified that on March 28, 2022 around 10:24 p.m., while he drove home from the patrol post after his shift in his marked patrol cruiser, he observed a Toyota Camry traveling south on U.S. 23. Large noticed that an obstruction, later determined to be leaves, partially blocked the Camry's

license plate and validation sticker. The first time Large checked the license plate, it "didn't match the * * * Camry." The second time he checked the plate, Large changed one letter, found a match, and learned that the tags "expired back in December of last year."

{¶4} Less than two miles after Trooper Large began to follow the vehicle, he stopped the Camry based on the expired validation sticker and obstructed plate violations. Large approached the passenger side of the vehicle at minute 2:04 of the dash camera video and spoke with the driver (Hostetter), the front seat passenger (appellant), and the backseat passenger (Karshner). Large explained the reason for the stop and requested Hostetter's driver's license and vehicle information. During the exchange, Large "smelled the odor of raw marijuana coming from the vehicle." When Large knelt down to again speak to the driver, he could only smell cigarette smoke which, he explained, is often used to mask the scent of other drugs. Appellant and Karshner "were both avoiding eye contact with me," and "I could see that [appellant] was breathing heavily." Hostetter also acted nervously, "avoiding eye contact, giving me short answers, hands trembling."

{¶5} Trooper Large had seen Pickaway County Sheriff's Deputy and Canine Handler Seth Thomas "less than three miles" back in the median, so Large asked dispatch to call Thomas to the scene. Large

removed Hostetter from the vehicle at minute 4:36, about three minutes after he first approached the vehicle, to obtain Hostetter's information because Large intended to "give him a citation for expired tags."  In addition, Large explained that he removed Hostetter "based on everything that went on when I first approached, the avoid eye contact, the odor of marijuana, and then there was no odor."  Large noted that the group traveled from Columbus, "a major area for crime, drugs, guns, stuff like that" to Chillicothe, and "Chillicothe is the same.  U.S. 23 pipeline is the fastest route from Columbus to Chillicothe."  Large acknowledged that Hostetter did not smell like marijuana when he removed him from the vehicle.

{¶6}  At minute 5:15 of the video, Trooper Large patted Hostetter down for weapons and placed him in the back seat of his cruiser "until I could fill out the citation."  Hostetter stated that he had recently purchased the vehicle and had "pretty much * * * forgot about the tags."  Hostetter also told Large that the group "had been up to see Mr. Netter's cousin's house in the Columbus area, and they were heading back to Chillicothe."  At approximately 8:30, Large requested Hostetter's address and contact information. Deputy Thomas arrived "about eight minutes" into the stop.  Large briefed Thomas and watched traffic while Thomas conducted his

canine walk-around.  Thomas approached the vehicle to explain the canine sniff protocol to the remaining occupants at 10:00.  The canine approached the vehicle at 11:10 and alerted to the presence of drugs in the vehicle at 11:27 and 11:42.

{¶7}  Based on the canine alert, Trooper Large removed the two passengers, patted them down, and placed appellant in Large's cruiser and appellant's girlfriend in Deputy Thomas's cruiser. When Large searched the vehicle, he began at the driver's side, "the floor area, I looked underneath the driver's seat, and on the back side, I saw a Wendy's bag with different baggies in it, and from there I could see that it was either trash or contraband." Large could not reach the bag from the front seat, so he went to the back side of the seat and retrieved the Wendy's bag with cocaine inside.  Large also found raw marijuana in a blue bag in the glove compartment.  Once Large found the contraband, he advised appellant of his *Miranda* rights and placed him under arrest.

{¶8}  Deputy Thomas arrived at the scene less than ten minutes after the stop began.  After being briefed, Thomas approached the vehicle, spoke to the occupants, and informed them about the canine sniff protocol.  Thomas stated that the canine alerted "on the odor of narcotics on the passenger's side there and also again on the trunk."  After the canine alerted to the presence of drugs in the

vehicle, Trooper Large and Thomas removed the passengers from the vehicle.  The officers' search revealed "a large bag of white powdery substance in the back seat."  Ohio State Highway Patrol Trooper Tazz Ashbaugh also assisted at the scene.

{¶9}  After the trial court overruled the motion to suppress evidence, appellant entered a no contest plea to Count Two, possession of cocaine in violation of R.C. 2925.11(A), a first-degree felony.  The court accepted appellant's plea, found him guilty, and sentenced him to serve (1) an 8-year minimum up to 12-year indeterminate term in prison, and (2) a mandatory post-release control term.  This appeal followed.

I.

{¶10} In his first assignment of error, appellant asserts that the trial court erred when it denied his motion to suppress evidence. In particular, appellant argues that (1) an off-duty law enforcement officer cannot stop a vehicle "for a perceived low-level non-moving traffic infraction," (2) it is not scientifically appropriate to conduct a canine walk-around with vehicle occupants who may have the residual odor of a drug like marijuana, (3) it is not scientifically appropriate to conduct a canine walk-around with a dog whose failure rate is unknown, and (4) the odor of "raw marijuana" alone cannot constitute inherent evidence of criminal

activity because the Ohio General Assembly legalized hemp prior to the stop and the odor of raw marijuana and odor of hemp cannot be distinguished.

{¶11} Generally, appellate review of a motion to suppress evidence presents a mixed question of law and fact. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 16, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 81, *State v. Hansard,* 4th Dist. Gallia No. 19CA11, 2020-Ohio-5528, ¶ 15.  When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is best positioned to resolve questions of fact and evaluate witness credibility.  *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.  Thus, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings.  *Id.; State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982); *State v. Debrossard*, 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 9.  A reviewing court must then independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the case's facts.  *See Roberts* at ¶ 100; *Burnside, supra*, at ¶ 8.

{¶12} The Fourth and Fourteenth Amendments to the United States

Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable governmental searches and seizures. *State v. Shrewsbury,* 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 14, citing *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. The exclusionary rule protects this constitutional guarantee and mandates the exclusion of evidence obtained from an unreasonable search and seizure. *Id.*

{¶13} First, appellant contends that an off-duty police officer cannot intervene in a minor traffic infraction and conduct a pursuit, stop, and detention. As a threshold matter, we observe that appellant cites no authority for this assertion. It is axiomatic that the failure to cite case law or statutes in support of an argument, as App.R. 16(A)(7) requires, constitutes grounds to disregard the assigned error pursuant to App.R. 12(A)(2). Moreover, officers are called upon to enforce the laws of the State of Ohio at all times, and other Ohio courts have determined that a police officer is always on duty, even for other purposes. *See, e.g., State v. Horton*, 12th Dist. No. CA2000-04-024, 2000 WL 1875803 (Dec. 26, 2000)(off-duty officer has a continuing right and obligation to enforce the law); *Cleveland v. Floria*, 121 Ohio Misc.2d 118, 2002-Ohio-7456, 782 N.E.2d 1257 (a police officer, not in uniform, can testify in court about a traffic violation observed

while not officially on traffic duty); *Warrensville Hts. v. Jennings,* 58 Ohio St.3d 206, 569 N.E.2d 489 (1991) (off-duty drug involvement is valid reason for dismissal of police officer because officer has continuing duty to obey and enforce the criminal law, even when off duty). It does appear, however, that an off-duty officer in an unmarked vehicle may not execute an investigatory stop. This is not the situation here as Trooper Large drove a marked cruiser.

**{¶14}** Second, appellant asserts that Trooper Large did not possess probable cause or reasonable suspicion to stop the vehicle, detain the occupants, or search the vehicle. A traffic stop initiated by a law enforcement officer constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Id.* An officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred. *Id.* at 810, 116 S.Ct. 1769 (citations omitted); *accord State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23; *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996). Law enforcement officers also may stop a vehicle if they

have reasonable suspicion "that criminal activity " 'may be afoot.' " " *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *accord State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 19 (officer may "make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity").

{¶15} Relevant to the case at bar, a police officer who observes a de minimis violation of traffic laws may stop a driver. *State v. Debrossard,* 4th Dist. Ross No. 13CA3395, 2015-Ohio-1054, ¶ 13, citing *State v. Guseman*, 4th Dist. Athens No. 08CA15, 2009-Ohio-952, ¶ 20, citing *State v. Bowie*, 4th Dist. Washington No. 01CA34, 2002-Ohio-3553, ¶ 8, 12, and 16, citing *Whren; see also Harper* at ¶ 24.  Moreover, the Supreme Court of Ohio has held, "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop[.]" *Dayton* at paragraph one of the syllabus.

{¶16} In the case sub judice, we believe that the evidence

supports the view that Trooper Large articulated sufficient facts that gave him reasonable suspicion or probable cause to stop the vehicle. As evidenced by both testimony and the video, leaves obstructed Hostetter's license plate in violation of R.C. 4503.21 (A)(2) ["The license plate * * * shall not be covered by any material that obstructs its visibility."] and Hostetter's validation sticker had expired in violation of R.C. 4503.11["No person who is the owner * * * of a motor vehicle * * * shall fail to file annually the application for registration or to pay the tax therefor"]. Thus, Large possessed a sufficient lawful basis for the traffic stop.

{¶17} Third, appellant asserts that, even if the initial stop complied with the Fourth Amendment, Trooper Large improperly expanded the scope of the stop when he conducted a canine walk-around. We recognize that courts have concluded that the use of a drug detection canine does not constitute a "search" and an officer is not required, before a canine sniff, to establish probable cause or a reasonable suspicion that drugs are concealed in the vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Consequently, an officer needs no suspicion or cause to run a dog around a stopped vehicle if performed contemporaneously with legitimate activities associated with the

traffic violation. *Id.* Thus, a canine walk-around of a vehicle that occurs during a lawful traffic stop does not violate an individual's constitutional rights. *Id.* However, absent reasonable suspicion an officer may not extend an otherwise-completed traffic stop to conduct a canine sniff. *Rodriguez v. United States,* 575 U.S. 348, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015).

{¶18} In general, an investigative stop may last no longer than necessary to accomplish the initial goal of the stop:

> Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, *Caballes*, 543 U.S., at 407, 125 S.Ct. 834 and attend to related safety concerns, infra, at 1619 – 1620. *See also United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." *Ibid*. *See also Caballes*, 543 U.S., at 407, 125 S.Ct. 834. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. *See Sharpe*, 470 U.S., at 686, 105 S.Ct. 1568 (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").

*Rodriguez,* 575 U.S. 348 at 354, 135 S.Ct. 1609. Therefore, the pertinent question is not whether a canine sniff occurs before or after an officer issues, or could have issued, a traffic citation,

but whether the canine sniff extends the stop. *Id.*

**{¶19}** Law enforcement tasks generally associated with traffic infractions include (1) determining whether to issue a traffic citation, (2) checking the driver's license, (3) determining the existence of outstanding warrants, (4) inspecting the vehicle's registration, and (5) examining proof of insurance. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *State v. Farrow*, 2023-Ohio-682, 209 N.E.3d 830, ¶ 14 (4th Dist.), citing *Rodriguez* at 355, 135 S.Ct. 1609; *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36 (during a traffic stop, motorist may be detained for a period of time sufficient to issue a citation "and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates").

**{¶20}** After a reasonable time for the purpose of the original traffic stop to elapse, an officer must then have "'a reasonable articulable suspicion of illegal activity to continue the detention.'" *State v. Jones,* 2022-Ohio-561, 185 N.E.3d 131, ¶ 22 (4th Dist.), quoting *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.).

> When a police officer's objective justification to continue detention of a person stopped for a traffic violation for

the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continuing detention to conduct a search constitutes an illegal seizure.

*State v. Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762 (1997), paragraph one of the syllabus.

**{¶21}** Thus, if after talking with a driver a reasonable police officer would be satisfied that no unlawful activity had occurred, the driver must be permitted to continue on his way. *State v. Venham*, 96 Ohio App.3d 649, 656, 645 N.E.2d 831, 835 (4th Dist.1994). However, if the officer "ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *Robinette* at 241, 685 N.E.2d 762. The detention of the motorist may last as long as the reasonable suspicion of criminal activity continues. "However, the lawfulness of the initial stop will not support a 'fishing expedition' for evidence of another crime." *Venham, supra,* at 655.

**{¶22}** Consequently, "[t]he detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop."

*State v. Batchilli,* 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.S.2d 1282, ¶ 15, citing *State v. Myers*, 63 Ohio App.3d 765, 771, 580 N.E.2d 61 (2d Dist.1990); *Venham*, 96 Ohio App.3d 649, 655, 645 N.E.2d 831, *State v. Howard*, 12th Dist. Preble No. CA 2006-02-002, CA 2006-02-003, 2006-Ohio-5656, ¶ 16. The "reasonable and articulable" standard applied to a prolonged traffic stop encompasses the totality of the circumstances." *Id.* at ¶ 16, citing *United States v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). However, *Rodriguez v. United States*, *supra*, prohibits seizures that result from inquiries unrelated to the purpose of a traffic stop that "measurably extend[s] the duration of the stop." *Id.* at 1615.

{¶23} Ohio courts do not apply a bright-line test regarding a specific amount of elapsed time to determine whether an officer has unreasonably prolonged a traffic stop. The Supreme Court of Ohio has held that "[a] traffic stop is not unconstitutionally prolonged when permissible background checks have been diligently undertaken and *not yet completed* at the time a drug dog alerts on the vehicle." *Batchilli* at ¶ 14 (Emphasis added). Instead, courts look at the totality of the circumstances to determine if an unreasonable prolonged delay occurred. The Second District Court of Appeals observed:

In the wake of *Rodriguez*, Ohio courts have continued to apply a duration-based standard for evaluating traffic stops such as the stop at issue in this case. *See, e.g., State v. Matheney*, 2d Dist. Montgomery No. 26876, 2016-Ohio-7690, 2016 WL 6672805, ¶ 21-32; *State v. Neal*, 10th Dist. Franklin No. 15AP-771, 2016-Ohio-1406, 2016 WL 1288000, ¶ 15-23; *State v. Reece*, 1st Dist. Hamilton No. C-140635, 2015-Ohio-3638, 2015 WL 5257151, ¶ 15-25; but see *State v. Hill*, 2d Dist. Montgomery No. 26345, 2016-Ohio-3087, 2016 WL 2944821, ¶ 10-14 (describing *Rodriguez* as "arguably prohibit[ing] [a] seizure[ ] resulting from inquiries unrelated to the initial purpose of a traffic stop" if the unrelated inquiries measurably extend the stop's duration). These cases establish that to determine whether a police officer completes a traffic stop within a reasonable length of time, a court should evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently pursued the corresponding investigation. (Citations omitted.) *Matheney*, 2016-Ohio-7690, 2016 WL 6672805, ¶ 22.

*State v. Mee,* 2017-Ohio-7343, 96 N.E.3d 1020, ¶ 19 (2d Dist.).

**{¶24}** Some Ohio courts have found constitutional violations that involve a relatively short stop duration. *See State v. Byrd,* 2022-Ohio-4635, 204 N.E.3d 681 (8th Dist.)(although canine sniffed within 15 minutes of traffic stop, officer acknowledged investigation concluded eight minutes before canine's arrival), *State v. Thomas,* 2020-Ohio-3539, 154 N.E.3d 1074 (9th Dist.) (traffic stop not completed within reasonable time given officer normally takes 10-15 minutes to write warning, but evidence showed "a pause of more than three minutes during the stop, before prior to the arrival of the K-9 unit, where the officer was not diligently conducting the investigation."), *State v. Neyhard*, 11th

Dist. Ashtabula No. 2021-A-0005, 2022-Ohio-1098 (10 minutes unreasonable when video and testimony did not "affirmatively demonstrate that the officer was awaiting any information from dispatch necessary to finishing the tasks reasonably related to the purpose of the stop."); *State v. Green,* 2016-Ohio-4810, 69 N.E.3d 59 (7th Dist.)(similar to *Rodriguez,* officer made the stop, then called for canine officer, wrote and issued the warning in one to two minutes, canine took 10 minutes to arrive and another 3 to search the vehicle; dog did not complete the vehicle sniff until 11-12 minutes after warning issued, this improperly extended time beyond time required for traffic stop).

{¶25} However, other Ohio courts have concluded that a very brief stop, similar to the duration of the stop in the present case, does not violate the Fourth Amendment. *See State v. Johnson,* 2d Dist. Montgomery No. 20624, 2005-Ohio-1367 (no violation when officer testified typical stop requires 15-20 minutes to complete and sniff occurred 7 minutes into stop), *State v. Blatchford*, 2016-Ohio-8456, 79 N.E.3d 97 (12th Dist.)(no violation when officer testified normal traffic stop between 15-20 minutes, dog arrived within ten minutes and alerted within 12 ½ minutes), *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992) (15 minute detention reasonable). *See also United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (20 minute detention

reasonable); *Illinois v. Caballes*, 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (no constitutional violation when canine sniff less than 10 minutes after initiation of stop, defendant placed in cruiser and officer not yet issued a citation); *Batchilli*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, at ¶ 14 (no evidence to suggest detention for traffic violation of sufficient length to make it constitutionally dubious when dog alerted 8 minutes and 56 seconds into the stop and neither background check nor traffic citation had been completed); *State v. Brown*, 183 Ohio App.3d 337, 2009-Ohio-3804, 916 N.E. 2d 1138, ¶ 23 (6th Dist.)(no violation when canine sniff within 15 minutes of stop, a reasonable time to process a traffic citation).

{¶26} Turning to the case sub judice, we agree with the trial court's conclusion that Trooper Large possessed probable cause to stop the vehicle based on the obstructed license plate and expired validation sticker. Once stopped, Large diligently completed his duties that corresponded with the traffic citation. In fact, evidence adduced at the suppression hearing showed that Large continued to request and enter information from the driver at minute 8:30 of the dash camera video and Deputy Thomas approached the vehicle at 10:00 to explain the canine walk-around protocol. By 11:10, the canine approached the vehicle, and by 11:27, alerted to the presence of drugs in the vehicle. At that point, officers

possessed probable cause to search the vehicle and found nearly 250 grams of cocaine about 22 minutes into the stop.

{¶27} Appellant characterized the extension of the stop as keeping him "captive for 15 minutes until the K-9 arrived," and that Trooper Large did not attempt "to give the driver a ticket regarding the two dried leaves on the plate." However, Large testified, and the body camera video shows, that while he waited for the canine to arrive, Large diligently checked the driver's license, registration, and criminal history. At minute 8:30 of the dash camera video, Large requested Hostetter's address; at 9:39 Large exited his vehicle to brief Deputy Thomas; and by 11:10, the canine walked around the vehicle. Thus, we agree with the trial court's conclusion that the canine sniff did not unconstitutionally prolong the stop. *See, e.g., Caballes, supra,* 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (no constitutional violation when canine sniff less than 10 minutes after initiation of stop, defendant placed in cruiser and officer not yet issued a citation); *Batchilli*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.S.2d 1282 (no evidence to suggest detention for traffic violation of sufficient length to make it constitutionally dubious when dog alerted 8 minutes and 56 seconds into the stop and neither background check nor traffic citation had been completed.)

{¶28} Finally, appellant asserts that no probable cause existed for the search because "the dog sniff was fatally flawed." Appellant contends that because drug detection dogs are trained to signal the presence of drugs and the residual odor of such items no longer in the vehicle, their reliability is in question. In particular, appellant argues that since the legalization of hemp, "a substance whose smell is indistinguishable from marijuana," dogs trained to sniff for marijuana cannot establish probable cause that criminal activity is afoot because they cannot distinguish between the scent of legal hemp and illegal marijuana.

{¶29} Appellant cites *United States v. Jones*, 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) and *Florida v. Jardines*, 569 U.S. 1, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) for the proposition that sometimes a dog's sniff is a search and requires probable cause. We find neither case relevant to our analysis. *Jones* did not involve a canine search, but instead held that when the government attaches a Global-Positioning-System (GPS) tracking device to a vehicle and uses that device to monitor the vehicle's movements on public streets, the action constitutes a Fourth Amendment search. *Id.* at 404. In *Jardines*, the defendant moved to suppress evidence seized pursuant to a search warrant obtained after a canine sniff of the front porch of the defendant's home. The Supreme Court held

that law enforcement officers' use of a drug-sniffing dog on the front porch of a home to investigate an unverified tip that the defendant grew marijuana in the home constituted a trespassory invasion of the curtilage and, therefore, a Fourth Amendment search. *Id.* at 11-12. However, *Jardines* is distinguishable from the case at bar because it involved a home rather than a car, and the court explained, "When it comes to the Fourth Amendment, the home is first among equals." *Id.* at 6. Thus, neither *Jones* nor *Jardines* affects our analysis in the case sub judice.

{¶30} Finally, appellant cites *Florida v. Harris*, 568 U.S. 237, 133 S.Ct. 1050, 185 L.Ed.2d 61 (2013) for the proposition that "a detection dog recognizes an odor, not a drug." In *Harris*, the Supreme Court considered the reliability of canine officers and what evidence the government must present to establish a dog's reliability. The Florida court required comprehensive documentation of a dog's prior "hits or misses." The Supreme Court rejected a bright-line test and observed that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 246. A defendant has the "opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses." *Id.* at 247.

{¶31} In the case at bar, the trial court admitted into evidence K-9 Kahn's training records and certifications. Therefore, because neither the initial traffic stop, the investigatory detention, nor the search of appellant's vehicle violated the Fourth Amendment, we conclude that the trial court properly overruled appellant's motion to suppress.

{¶32} Accordingly, for all of the foregoing reasons, we overrule appellant's first assignment of error.

## II.

{¶33} In his second assignment of error, appellant asserts that the trial court erred when it (1) imposed a sentence more than 50% longer than the state's recommendation, (2) that "was oppressive and an abuse of discretion in violation of his Eighth Amendment rights."

{¶34} First, we observe that appellant does not provide authority for this assignment of error. Appellant argues, however, that the trial court "did not properly consider mitigating circumstances of his mental health and substance use disorder afflictions, and further did not sufficiently consider his background as a long-time victim of abuse in foster care." Appellant contends that the trial court "should have at a minimum followed the recommendation of the State, and in not doing so the

Court violated Defendant's Eighth Amendment rights."

{¶35} When reviewing felony sentences, appellate courts apply the standard of review outlined in R.C. 2953.08(G)(2). *State v. Prater*, 4th Dist. Adams No. 18CA1069, 2019-Ohio-2745, at ¶ 12, citing *State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, at ¶ 13. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

"[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Thus, an appellate

court may vacate or modify any sentence that is not clearly and

convincingly contrary to law if the appellate court concludes, by

clear and convincing evidence, that the record does not support the

sentence.

{¶36} The Supreme Court of Ohio has summarized the

applicability of R.C. 2929.11 and 2929.12 as follows:

> In Ohio, two statutory sections serve as a general guide for every sentencing. First, R.C. 2929.11(A) provides that the overriding purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." To achieve these purposes, the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution." *Id.* The sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). * * *
>
> Second, R.C. 2929.12 specifically provides that in exercising its discretion, a trial court must consider certain factors that make the offense more or less serious and that indicate whether the offender is more or less likely to commit future offenses. * * *
>
> [A]n offender's conduct is considered less serious when there are "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." R.C. 2929.12(C)(4). R.C. 2929.12(C) and (E) also permit a trial court to consider "any other relevant factors" to determine that an offense is less serious or that an offender is less likely to recidivate.

*State v. Day*, 2019-Ohio-4816, 149 N.E.3d 122, ¶ 15 (4th Dist.),

quoting *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d

890, ¶ 17-18. This court has held that, generally, a sentence is not contrary to law if a trial court considered the R.C. 2929.11 purposes and principles of sentencing, as well as the R.C. 2929.12 seriousness and recidivism factors, properly applied post-release control, and imposed a sentence within the statutory range. *Prater*, *supra*, at ¶ 20; *Graham, supra*, at ¶ 16; *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 21; *State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 38 (4th Dist.). Further, a trial court is not required to discuss each of the seriousness and recidivism factors of R.C. 2929.12 individually on the record during the sentencing hearing. *State v. Davis*, 11th Dist. No.2002-L-188, 2004-Ohio-792, ¶ 8, citing *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

**{¶37}** In the case sub judice, we first note that the trial court adhered to the Crim.R. 11(C) provisions. Before it accepted appellant's no contest plea, the court determined that appellant made his plea voluntarily, understood the nature of the charges against him and understood the maximum penalty involved. Crim.R. 11(C)(2)(a). The court also informed appellant of, and determined that he understood the effect of, his plea and that it could proceed with judgment and sentence. Crim.R. 11(C)(2)(b). The court also informed appellant, and determined that he understood,

that by entering a plea of no contest, he waived his constitutional rights associated with a jury trial. Crim.R. 11(C)(2)(c).

{¶38} Our review of the record further reveals that in the case at bar, both trial counsel and the state reviewed appellant's mental health and substance abuse diagnoses at sentencing and trial counsel asked the court to consider appellant's childhood and history. The court also considered appellant's statement. The court concluded that appellant's criminal record "speaks louder than what you just spoke here today" and continued, "You've got a lousy record. You know it and I know it." Appellant replied, "Yes, sir." The court indicated on the record that it considered the presentence report, appellant's criminal history, as well as the principles and purposes of sentencing pursuant to R.C. 2929.11 and the seriousness and recidivism factors in accordance with R.C. 2929.12, and concluded "that the appropriate sanction in this case would be a period of eight to 12 years in prison, and that eight years is mandatory."

{¶39} After our review of the record, we cannot say the trial court abused its discretion when it imposed a sentence more severe than the state's recommendation. It is the trial court's duty to determine an appropriate sentence. Moreover, a jointly recommended sentence does not bind a trial court. *State v. Underwood*, 124 Ohio

St.3d 365, 2010-Ohio-1, ¶ 28.  A "recommended" sentence is "a nonbinding recommendation to the court, which the court is not required to accept or comment on."  *State v. Link*, 5th Dist. Licking No. 21CA0059, 2022-Ohio-2067, ¶ 54 quoting *State v. Harvey*, 8th Dist. Cuyahoga No. 107168, 2019-Ohio-715, ¶ 7; *Davis, supra*, at ¶ 10, citing *State v. Palmer*, 7th Dist. No. 99 CA 6, 2001 WL 1497097 (Nov. 19, 2001).  Thus, a trial court may reject a plea agreement and is not bound by a jointly-recommended sentence.  *Link* at ¶ 55 citing *State v. Penrod*, 5th Dist. Licking No. 16-CA-83, 2017-Ohio-7732, ¶ 16, citing *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, 831 N.E.2d 430, ¶ 6.  Once again, the decision to accept or to reject a plea agreement rests solely within the trial court's discretion.  *State v. Jefferson*, 5th Dist. Delaware No. 11 CAA 04 0033, 2012-Ohio-148, ¶ 50, citing *State v. Asberry*, 173 Ohio App.3d 443, 2007-Ohio-5436, 878 N.E.2d 1082.  Thus, appellant could not have relied on any alleged state-recommended prison term because a trial judge is not required to follow such a recommendation.

**{¶40}** In the case sub judice, the trial court informed appellant at his plea hearing of the maximum possible penalty- 11 to 16 ½ years in prison-and a $20,000 fine.  The sentence fell within the statutory range, and nothing in the record suggests that

the trial court ignored the factors appellant identifies on appeal. "Simply because the trial court did not find the factors identified by Appellant to militate in favor of a less severe sentence does not imply the sentence is contrary to law." *State v. Miller*, 11th Dist. Lake No. 2018-L-133, 2019-Ohio-2290, ¶ 25; *State v. Smith,* 5th Dist. Muskingum No. CT2022-0041, 2023-Ohio-598, ¶ 39.

{¶41} In addition, appellant asserts that his sentence violates the Eighth Amendment to the United States Constitution. That provision states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Accord Article I, Section 9, Ohio Constitution. The Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

{¶42} It is well established that sentences do not violate the constitutional provisions against cruel and unusual punishment unless the sentences are "so disproportionate to the offense as to shock the moral sense of the community." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). Nonetheless, "[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *Id.; accord State v. Stevens*, 5th Dist. Stark No. 2017CA00024, 2017-

Ohio-8692, ¶ 10. "Because the individual sentences imposed by the court are within the range of penalties authorized by the legislature, they are not grossly disproportionate or shocking to a reasonable person or to the community's sense of justice and do not constitute cruel and unusual punishment." *State v. Gwynne,* 2021-Ohio-2378, 173 N.E.3d 603, ¶ 30, citing *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 23. Moreover, we note that the record reveals (1) appellant's prior trespass, heroin possession, and cocaine possession convictions, (2) appellant's "significant rule violations [in prison]," and (3) appellant "became a member of the Bloods in prison when he was 19 years old."

**{¶43}** After our review, we conclude that the trial court complied with all pertinent sentencing requirements, reviewed and considered the presentence investigation report and the sentencing hearing testimony, and arrived at a sentence within the statutory range. Therefore, it cannot be said that the length of the sentence is contrary to law. *State v. Bass,* 4th Dist. Washington No. 16CA32, 2017-Ohio-7059, ¶ 7. Consequently, because we believe the record supports appellant's sentence and the sentence is not contrary to law, we overrule appellant's second assignment of error.

**{¶44}** Accordingly, for all the foregoing reasons, we affirm the

trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

    It is ordered that the judgment be affirmed.  Appellee shall recover from appellant the costs herein taxed.

    The Court finds there were reasonable grounds for this appeal.

    It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

    If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

    A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

    Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

                                For the Court




    BY:_____
                                Peter B. Abele, Judge



                    NOTICE TO COUNSEL

    Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.